UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBIN AVERY,

        Plaintiff,

   v.

FIRST RESOLUTION MANAGEMENT
CORPORATION, a foreign corporation,
et. al.,

        Defendants.

Civil No. 06-1812-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

     This action arises, in part, out of a prior state court action initiated by defendants First Resolution Management Corp. and First Resolution Investment Corp. (together, First Resolution) and their attorneys, Derrick E. McGavic (McGavic) and Kristin K. Finney (Finney) (together, the Attorney Defendants) (First Resolution and the Attorney Defendants are collectively referred to as defendants), to collect a credit card debt from plaintiff. That action (hereinafter, the Underlying Lawsuit) was dismissed voluntarily by defendants. Plaintiff later filed this action, claiming that defendants' debt collection practices violated sections 1692e,

OPINION AND ORDER- 1

1692f, and 1692g of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA). Plaintiff seeks actual damages, additional damages from each defendant in the amount of $1,000, as well as attorney fees and costs under the FDCPA. Plaintiff also claims that First Resolution violated section 1681s-2 of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, but that claim is not at issue in the motions addressed in this Opinion and Order.

First Resolution asserts a counterclaim against plaintiff seeking to collect the underlying credit card debt, which remains outstanding. Plaintiff moves to dismiss First Resolution's counterclaim on grounds that (1) it is a permissive counterclaim over which this court lacks subject matter jurisdiction, and (2) the relevant statute of limitations has expired, making the counterclaim untimely.

Additionally, the Attorney Defendants and plaintiff have filed summary judgment motions. The Attorney Defendants move for partial summary judgment on plaintiff's claims to the extent they are based on an alleged attempt to collect a time-barred debt, arguing that the Underlying Lawsuit was timely. Plaintiff opposes the Attorney Defendants' motion and moves for partial summary judgment on the issue of defendants' liability under the FDCPA for attempting to collect a time-barred debt. First Resolution opposes this motion on grounds that the debt was not time-barred, and alternatively, asserts that genuine issues of fact remain as to FDCPA liability and damages.

The court heard oral argument on May 14, 2007. For the following reasons, the Attorney Defendants' Motion for Partial Summary Judgment [20] is granted, plaintiff's Motion for Partial Summary Judgment [26] is denied, and plaintiff's Motion to Dismiss First Resolution's Counterclaim [15] is granted.

OPINION AND ORDER- 2

**FACTUAL BACKGROUND**

In July 2001, plaintiff, who resided in Oregon at all relevant times, received an offer for a credit card from Providian National Bank (Providian). Plaintiff's application was approved and plaintiff received the credit card in the mail. Plaintiff allegedly received a Providian National Bank Visa and Mastercard Account Agreement separately (the Agreement). Plaintiff accepted the terms and conditions in the Agreement by using the credit card and received billing statements at her Oregon residence for an account maintained by Providian (the Account). The last payment was credited to the Account on November 5, 2001. Plaintiff allegedly advised creditors that she was experiencing financial distress in the latter part of 2001.

Plaintiff failed to make the minimum payment due on December 16, 2001, or any payment after that date. Providian assigned the Account for collection shortly after plaintiff missed the minimum payment on December 16, 2001.

The Agreement provides that, on default, interest accrues on the outstanding balance. At the time of default, the outstanding balance was $2,971.82, plus interest at 23.99 percent per annum. From December 16, 2001, to June 24, 2002, Providian allegedly capitalized $786.63 in charges and interest which were not authorized by the Agreement.

The Agreement contains a choice-of-law provision, stating that New Hampshire law applies regardless of the cardholder's residence. The relevant statute of limitations for an action on a credit card under New Hampshire law is found in N.H. Rev. Stat. Ann. § 508:4, which provides:

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at

OPINION AND ORDER- 3

>the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

Another provision of the Agreement states: "You waive . . . any applicable statute of limitations." Decl. of Robin Avery (First), Ex. 2, ¶ 15.

On November 15, 2004, First Resolution sent plaintiff a "Final Notice" identifying itself as the owner of the debt on the Account, and indicating that the Account would be forwarded to a lawyer in plaintiff's area if the Account was not resolved within twenty-one days of the date of the letter, December 6, 2004.

Although the parties dispute when the Account was forwarded to defendant McGavic for collection, it is undisputed that plaintiff received a letter from McGavic dated December 29, 2004, more than three years after the December 16, 2001, default on the Account.

On February 9, 2006, McGavic filed the Complaint in the Underlying Lawsuit in the Washington County Circuit Court, Oregon. McGavic declares that prior to filing the Underlying Lawsuit, he determined that the statute of limitations on plaintiff's debt was tolled by her absence from New Hampshire.

On February 9, 2006, plaintiff was served with copies of a summons in the Underlying Lawsuit. That same day, plaintiff disputed and requested verification of the debt referenced in the Complaint. Plaintiff also allegedly requested proof that the statute of limitations had not expired. Defendant Finney declares that she did not learn that there might be an issue involving the statute of limitations until plaintiff's attorney contacted defendants in late September.

On May 2, 2006, defendant Finney represented that the amount due on the Account was $7,514.51; $7,619.61 on June 13, 2006; and $7,762.24 on August 10, 2006.

OPINION AND ORDER- 4

In July 2006, McGavic caused a copy of the summons and Complaint to be served on plaintiff. On September 13, 2006, McGavic served plaintiff with a notice of intent to apply for an Order of Default Judgment in the legal action.

On September 20, 2006, Finney received notice that plaintiff was represented by an attorney. The following day, Finney filed a Motion to Dismiss the Underlying Lawsuit without prejudice. Finney declares she decided to dismiss the case because McGavic decided it would be best to avoid protracted litigation over the relatively small amount in dispute, and not because plaintiff's attorney had raised the statute of limitations as a possible defense. Finney further declares that, based on research for a previous case, she believed that the statute of limitations should be tolled under New Hampshire law.

Plaintiff filed this action on December 19, 2006. On January 31, 2007, First Resolution filed a counterclaim seeking to collect the debt allegedly due on the Account (the Counterclaim), which plaintiff now moves to dismiss.

**STANDARDS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings

OPINION AND ORDER- 5

and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

When both parties file cross-motions for summary judgment, with both parties asserting that there are no uncontested issues of material fact, the court still must determine whether disputed issues of material fact are present, because a summary judgment cannot be granted if a genuine issue as to any material fact exists. *Fair Housing Council of Riverside County, Inc. v. Riverside*, 249 F.3d 1132, 1136 (9th Cir. 2001); *see also Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 & n. 5 (9th Cir. 2000) (acknowledging the district court's responsibility to analyze whether the record on cross-motions for summary judgment demonstrates the existence of genuine issues of material fact, even in those cases in which both parties believe that there are no material factual issues). The court must consider each summary judgment motion on its own merits and all appropriate evidentiary material identified and submitted in support of and in

OPINION AND ORDER- 6

opposition to both motions before ruling on each of them. *Fair Housing Council*, 249 F.3d at 1135.

## ANALYSIS

### A.     Motions for Partial Summary Judgment

The Attorney Defendants move for partial summary judgment dismissing plaintiff's FDCPA claims to the extent they are based on an alleged attempt to collect a time-barred debt. They assert that, as a matter of law, the statute of limitations has not expired on the underlying debt. Plaintiff opposes this motion and moves for summary judgment on the same issue, arguing that the underlying debt is time-barred as a matter of law.

At issue initially is determining which statute of limitations applies to the underlying debt. A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state's law applies. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999). Under Oregon law, "if a claim is substantively based . . . [u]pon the law of one other state, the limitation period of that state applies." O.R.S. 12.430(a).

Because the Agreement is governed by the substantive law of New Hampshire, New Hampshire's three-year statute of limitations applies to the underlying debt. *See* N.H. Rev. Stat. Ann. § 508:4; *see also A&B Lumber Co. v. Vrusho*, 871 A.2d 64, 66 (N.H. 2005) (citations omitted) ("Under New Hampshire law, a contract claim must be brought within three years of the contract's breach").

Plaintiff's last payment was credited to the Account on November 5, 2001. Thus, unless tolled, the statute of limitations for the underlying debt expired on November 5, 2004.

However, the Attorney Defendants argue that New Hampshire's statute of limitations has

OPINION AND ORDER- 7

been tolled by plaintiff's absence from that state. It is true that if New Hampshire's statute of limitations applies to the underlying debt, then that state's tolling rules also apply. *See* O.R.S. 12.440 ("If the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period, but its statutes and other rules of law governing conflict of laws do not apply").

Plaintiff concedes that she did not reside in New Hampshire before, during, or after the cause of action accrued for the underlying debt. Pl.'s Mem. Supp. Partial Summ. J. at 15. Under New Hampshire law, "[i]f the defendant in a personal action was absent from and residing out of the state at the time the cause of action accrued, or afterward, the time of such absence shall be excluded in computing the time limited for bringing the action." N.H. Rev. Stat. Ann. § 508:9. Plaintiff points to no basis through which process could have been served on her in New Hampshire. Accordingly, to the extent New Hampshire's three-year statute of limitations applies to the underlying debt, it never ran in favor of plaintiff. *See Gagnon v. Croft Mfg. & Rental Co.*, 235 A.2d 522, 524 (N.H. 1967) (time that a defendant corporation was absent from the state is excluded in computing the time limit for bringing the action); *Atwood v. Bursch*, 219 A.2d 285, 287 (N.H. 1966) (citations omitted) ("The general statute of limitations . . . runs only in favor of those who are within the state."); *Bolduc v. Richards*, 142 A.2d 156, 158 (N.H.1958) (citation and quotations omitted) (tolling the statute of limitations because of the debtor's absence from the state requires that process cannot be served upon the debtor); *Paine v. Drew,* 44 N.H. 306 (N.H.) (1862) ("tolling provision applies to defendants who have never resided in the State, as well as to those who have resided in it and have removed from it").

OPINION AND ORDER- 8

The Attorney Defendants acknowledge that New Hampshire's tolling provision, which would preclude the statute of limitations from ever running on the underlying debt, may impose an unfair burden on plaintiff. Mem. Supp. Defs.' Mot. for Partial Summ. J. at 4. Accordingly, Oregon's limitation provisions apply:

> If the court determines that the limitation period of another state applicable under ORS 12.430 and 12.440 is substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim, the limitation period of this state applies.

O.R.S. 12.450; *see also Fields v. Legacy Health Sys*, 413 F.3d 943, 954 (9th Cir. 2005) (citation omitted) (describing identical Washington provision as an "'escape clause,' allowing a court to evaluate the disparate effect of a foreign statute of limitations and choose to apply a local limitations period to avoid unfairness").

However, this provision fails to save plaintiff because, as plaintiff conceded at oral argument, under Oregon law her underlying debt is not time-barred and the Underlying Lawsuit was timely. Oregon law provides a six-year statute of limitations for breach of contract claims. *See* O.R.S. 12.090. The cause of action for the underlying debt accrued on the day that plaintiff made her last payment, which was November 5, 2001. *See* O.R.S. 12.450 (cause of action on debt shall be deemed to have accrued from the time of the last charge or payment proved in the account). Accordingly, under Oregon law the statute of limitations on the underlying debt will not expire until November 5, 2007, and the Underlying Lawsuit was timely.

In sum, this court finds as a matter of law that the underlying debt is not time-barred, pursuant to New Hampshire's tolling provisions and, alternatively, the application of Oregon's six-year statute of limitations period. As such, summary judgment is warranted in favor of defendants on plaintiff's FDCPA claims to the extent they depend upon an attempt to collect an

OPINION AND ORDER- 9

allegedly time-barred debt.

**B.      Plaintiff's Motion to Dismiss Counterclaim of First Resolution**

Plaintiff moves to dismiss the Counterclaim on grounds that the underlying debt is time-barred.  As discussed above, the underlying debt is not time-barred, pursuant to New Hampshire's tolling provisions and Oregon's six-year limitation period.  The Counterclaim is timely.

Plaintiff also moves to dismiss the Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(1), on grounds that the court lacks subject matter jurisdiction.  Plaintiff argues that the Counterclaim is not compulsory, this court lacks supplemental jurisdiction over it.

   **1.      The Counterclaim is Permissive**

First Resolution argues that the Counterclaim is compulsory under the Ninth Circuit's "logical relationship" test.  "Compulsory" counterclaims are claims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a).  The Ninth Circuit applies a "logical relationship test" to determine whether a counterclaim is compulsory.  Under this test, the court "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (quoting *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)).  A defendant failing to bring a compulsory counterclaim is barred from asserting that claim in a future proceeding.  Fed. R. Civ. P. 13(a); *Sams v. Beech Aircraft*, 625 F.2d 273, 276 n.4 (9th Cir. 1980) (citing *Baker*, 417 U.S. at 469 n.1); *see also Channell*, 89 F.3d at 385.  All counterclaims that are not compulsory are "permissive."  Permissive counterclaims are claims

that do "not aris[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b).

The Ninth Circuit has not addressed whether a counterclaim for the underlying debt in an FDCPA action should be regarded as compulsory or permissive. Plaintiff cites three decisions from district courts in this circuit holding that a counterclaim for the underlying debt in an FDCPA action is permissive, *not* compulsory. *See Sparrow*, 385 F. Supp. 2d at 1069 (citations omitted) (concluding that defendant debt collectors' claims were not compulsory and supplemental jurisdiction did not exist on that basis because "[w]hether a plaintiff in an unfair debt collection practices action actually has outstanding debt is irrelevant to the merits of that claim"); *Campos*, 404 F. Supp. 2d at 1168-69 (holding that a dental service provider's breach of contract counterclaim in FDCPA action was permissive, rather than compulsory because issues underlying the two claims were distinct and were required to be supported by different evidence); *Hart v. Clayton-Parker & Assoc.*, 869 F. Supp. 774, 777 (D. Ariz. 1994) ("every published decision directly addressing the issue . . . has found that FDCPA lawsuits and lawsuits arising from the underlying contractual debt are *not* compulsory counterclaims") (emphasis in original).

The court in *Sparrow* reasoned that the issues raised by an FDCPA claim and a counterclaim for the underlying debt are distinct:

> The [FDCPA claim] relates to the application of the FDCPA and focuses on a narrow realm of facts concerning the use of abusive, deceptive and/or unfair debt collection practices by defendants. On the other hand, [the defendant's] counterclaim encompasses a private duty under state law and requires a broad proof of facts establishing the existence and performance of a contract, the validity of the contract's provisions, a breach of the contract by the plaintiff and monetary damages resulting from the breach. The claim and counterclaim are, of course, 'offshoots' of the same basic transaction, but they do not represent the

OPINION AND ORDER- 11

same basic controversy between the parties.

385 F. Supp. 2d at 1068 (quoting *Leatherwood v. Universal Bus. Serv.*, 115 F.R.D. 48, 49 (W.D.N.Y. 1987).

Additionally, each claim requires different evidence to support it. *See Campos*, 404 F. Supp. 2d at 1169. Here, the Counterclaim requires proof of a valid contract and that plaintiff actually has outstanding debt. By contrast, plaintiff's FDCPA claim requires proof of defendants' allegedly abusive collection practices. Whether plaintiff actually has outstanding debt is essentially irrelevant to her FDCPA claims. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (holding that a debtor has standing to complain of violations of the FDCPA, regardless of whether a valid debt exists).

First Resolution cites no authority for the proposition that a claim for the underlying debt in an FDCPA action should be deemed compulsory, and the court is unpersuaded by First Resolution's attempts to distinguish the decisions that regarded such claims as permissive. First Resolution argues that the type of abusive conduct alleged by plaintiff (*e.g.*, attempting to collect a time-barred debt, as opposed to other abusive practices) sets this case apart because under these circumstances plaintiff's FDCPA claim also turns on whether the underlying debt is time-barred. Because the court finds that summary judgment is warranted on the statute of limitations issue, that distinction no longer applies.

Plaintiff asserted at oral argument that her remaining FDCPA claims involve alleged failures to verify the debt and attempts to collect amounts not authorized by the Agreement. As discussed above, other district courts in the Ninth Circuit have regarded counterclaims for the underlying debt as permissive in such circumstances, based on the different issues and evidence

OPINION AND ORDER- 12

involved. This court views this issue similarly and finds that the Counterclaim is permissive, not compulsory.

### 2. Supplemental Jurisdiction Under 28 U.S.C. § 1367(a)

Whether supplemental jurisdiction can be exercised over the Counterclaim under Section 1367 is a question of law. Federal courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treatises of the United States" and in all civil actions where complete diversity of citizenship exists and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

Additionally, the applicable statute, 28 U.S.C. § 1367, grants federal courts supplemental jurisdiction over state law counterclaims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367 applies to state law claims brought by a plaintiff as well as to counterclaims brought by a defendant.

Before Congress enacted the supplemental jurisdiction statute in 1990, the rule was that federal courts had supplemental jurisdiction over compulsory counterclaims because a defendant would otherwise lose the opportunity to be heard on that claim. *Baker v. Gold Seal Liquors*, 417 U.S. 467, 468 n.1 (1974); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996) ("Refusal to entertain a compulsory counterclaim might lead to its forfeiture"). By contrast, federal courts did not have jurisdiction over permissive counterclaims absent an independent basis for subject matter jurisdiction. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212-13 (2d Cir. 2004); *Channell*, 89 F.3d at 384; *see also Adams St. Joint Venture v. Harte*, 231 F. Supp. 2d 759, 761-62 (N.D. Ill. 2002).

OPINION AND ORDER- 13

More recently, many courts have concluded that the "same case or controversy" test established by Section 1367 extends supplemental jurisdiction beyond counterclaims that are compulsory and to encompass some permissive counterclaims. *See, e.g.*, *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1067 (E.D. Cal. 2005) (the "same case or controversy test is clearly broader than the 'same transaction or occurrence' test for compulsory counterclaims, but . . . also appears to be broader than the test for permissive counterclaims"); *Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1168 (N.D. Cal. 2005) ("The test for supplemental jurisdiction under Section 1367 appears to be broad enough to encompass some permissive counterclaims"); *see also Channell*, 89 F.3d at 384; *Jones*, 358 F.3d at 212-13.

Section 1367(a) extended supplemental jurisdiction beyond compulsory claims to encompass permissive claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Campos*, 404 F. Supp. 2d at 1169. Both the Counterclaim and plaintiff's underlying FDCPA claims relate to a single debt incurred by plaintiff. Accordingly, the Counterclaim satisfies the "same case or controversy" test and supplemental jurisdiction could be exercised under Section 1367(a).

### 3. The Court Declines to Exercise Supplemental Jurisdiction

Even if supplemental jurisdiction exists, the court may decline to exercise supplemental jurisdiction over the Counterclaim if: (1) it raises a novel or complex issue of state law; (2) it substantially predominates over the claim(s) over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(c).

OPINION AND ORDER- 14

Other district courts in the Ninth Circuit have declined to exercise supplemental jurisdiction over a counterclaim for the underlying debt in an FDCPA suit, citing "compelling reasons" under Section 1367(c)(4). *See, e.g.*, *Campos*, 404 F. Supp. 2d at 1170-71; *Sparrow*, 385 F. Supp. 2d at 1070-71. These courts reason that allowing a debt collector to bring an action for the underlying debt in a case brought under the FDCPA may deter litigants from pursuing their rights under that statute:

> To allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this. Moreover, it would involve this Court in questions of no federal significance. Given the remedial nature of the FDCPA and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of . . . the target of the very legislation under which a FDCPA plaintiff states a cause of action.

*Sparrow*, 385 F. Supp. 2d at 1071 (quoting *Leatherwood*, 115 F.R.D. at 50 (citations omitted)); *Campos*, 404 F. Supp. 2d at 1170.

First Resolution argues that its timeliness defense to plaintiff's FDCPA claim places the same issues involved in the Counterclaim before the court and that declining jurisdiction would be inefficient and raises the risk of potential inconsistent judgments. These arguments are without merit. As discussed previously, summary judgment is warranted on the timeliness issue. Plaintiff's remaining FDCPA claims are distinct from the Counterclaim, both in terms of the issues presented and the evidence required. The *Campos* court rejected identical arguments when it declined to exercise supplemental jurisdiction over a counterclaim for the underlying debt in an FDCPA action. 404 F. Supp. 2d at 1170.

A major purpose of the FDCPA is to protect individuals from unfair debt collection practices regardless of whether the individual actually owes a debt. *Baker*, 677 F.2d at 777

OPINION AND ORDER- 15

(citations omitted) ("The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists"). This purpose provides a compelling reason for declining to exercise supplemental jurisdiction here.

As discussed above, summary judgment is warranted on plaintiff's FDCPA claims to the extent they depend on an alleged attempt to collect a time-barred debt. The remaining FDCPA claims involve alleged failures to verify and attempts to collect amounts not authorized by the Agreement. Plaintiff's liability under the Agreement is irrelevant to these issues. Allowing the Counterclaim here could lead to extensive litigation of individualized contract liability and damage issues that bear little relation to plaintiff's FDCPA claims. Thus, there is a possibility that the Counterclaim would substantially predominate over plaintiff's original FDCPA claims. Accordingly, the court declines to exercise jurisdiction based on Section 1367(c)(2).

In sum, the court finds that the Counterclaim is a permissive counterclaim over which the court could exercise supplemental jurisdiction under Section 1367(a). However, the court declines to exercise supplemental jurisdiction over the Counterclaim, pursuant to Section 1367(c), because of the public policy underlying the FDCPA and because the Counterclaim may substantially predominate over plaintiff's FDCPA claims.

///

///

///

///

///

**CONCLUSION**

OPINION AND ORDER- 16

For the foregoing reasons, defendants' Motion for Partial Summary Judgment [20] is GRANTED, plaintiff's Motion for Partial Summary Judgment [26] is DENIED, and plaintiff's Motion to Dismiss Counterclaim [15] is GRANTED.

IT IS SO ORDERED.

DATED this  25   day of May, 2007.

                                               /s/ Ancer L. Haggerty    
                                               Ancer L. Haggerty  
                                       United States District Judge